UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

_____

Clyde Whitledge,                                        Court File No. 15-cv-2686(PJS/LIB)

            Plaintiff,

v.

                                     **REPORT AND RECOMMENDATION**

Carrington Mortgage Services, LLC,

            Defendant.

_____

       This matter comes before the undersigned United States Magistrate Judge upon Defendant Carrington Mortgage Services, LLC's ("Defendant"), Motion to Dismiss, [Docket No. 4]. This case has been referred to the undersigned Magistrate Judge for a report and recommendation, in accordance with 28 U.S.C. § 636(b)(1) and Local Rule 72.1. (Order of Reference, [Docket No. 9]). The Court held a motions hearing on September 10, 2015.[1]

       For the reasons discussed herein, the Court recommends that Defendant's Motion to Dismiss, [Docket No. 4], be **GRANTED** and that the above captioned matter be **DISMISSED without prejudice**.

## I.      BACKGROUND

       This case arises from a credit report dispute and subsequent "validation" requests. Plaintiff Clyde Whitledge ("Plaintiff"), acting pro se, alleges that Defendant violated the Fair Debt Collection Practices Act (FDCPA) on three separate occasions.  Specifically, Plaintiff alleges that Defendant on January 22, 2015, did not properly validate, by presentment, the debt owed and, again on February 12, 2015, upon second request, did not present Plaintiff with the original note. (Compl., [Docket No. 1-1], at ¶¶ D–E). Plaintiff further alleges that Defendant

_____

[1] Plaintiff did not appear at the hearing, nor did he submit any written opposition to the motion.

verified the account as accurate to "the Credit Bureau" after Plaintiff had disputed the account at "the Credit Bureau." (Id. at ¶ H). Plaintiff alleges all of these actions were in violation of 15 U.S.C. 1692g. Plaintiff asks for statutory fines and to have the accounts removed from his credit report.[2]

Plaintiff filed his original Complaint in State Court, (Compl. [Docket No. 1-1]), on March 5, 2015. Defendant, subsequently, removed the case to Federal Court on June 9, 2015. (Notice of Removal [Docket No. 1]).

On June 16, 2015, Defendant filed the present dispositive Motion to Dismiss. (Motion to Dismiss [Docket No. 4]). In that motion, Defendant seeks Rule 12(b)(6) dismissal with prejudice for Plaintiff's failure to state a claim upon which relief can be granted. (Id.). District Judge Patrick J. Schiltz referred the present matter to Magistrate Judge Brisbois on June 17, 2015. (Order of Reference [Docket No. 9]).

## II.    STANDARD OF REVIEW

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." In addressing a motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim, "we look only to the facts alleged in the complaint and construe those facts in the light most favorable to the plaintiff." Riley v. St. Louis County of Mo., 153 F.3d 627, 629 (8th Cir. 1998) (citing Double D Spotting Serv., Inc. v. Supervalu, Inc., 136 F.3d 554, 556 (8th Cir. 1998)). In addressing a motion to dismiss, "[t]he court may consider the pleadings themselves, materials embraces by the pleading, exhibits attached to the pleading, and matters of public record." Illig v. Union Elec. Co., 652 F.3d 971, 976 (8th Cir. 2011) (citing Millis v. City of Grand Forks, 614 F.3d 495, 498 (8th Cir. 2010)). In ruling on a motion to

---

[2] Presumably Plaintiff also wants the debt extinguished, although he does not expressly ask for such relief in his Complaint.

dismiss for failure to state a claim, a court must draw all reasonable inferences in favor of the nonmoving party. See Maki v. Allete, Inc., 383 F.3d 740, 742 (8th Cir. 2004).

As discussed above, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal quotation marks and citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," but in contrast, "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 556-67). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Id. at 664.

"A document filed pro se is to be liberally construed, and a pro se complaint, however inartfully pleaded, must be held to less stringent standard than formal pleadings drafted by lawyers." Erikcon v. Pardus, 551 U.S. 89, 94 (2007) (citation omitted). However, "[a]lthough pro se pleading are to be construed liberally, pro se litigants are not excused from failing to comply with substantive and procedural law." Burgs v. Sissel, 745 F.2d 526, 528 (8th Cir. 1984).

## III.   STATEMENT OF ALLEGED FACTS[3]

On January 1, 2015, Plaintiff requested and received a credit report from what he described as "the Credit Bureau." (Compl., [Docket No. 1-1], at ¶ A).[4] "To ensure that these

---

[3] In drafting the statement of alleged facts, the Court has viewed the facts in the light most favorable to the Plaintiff and resolved all factual disputes in favor of Plaintiff, the non-moving party. See Dakota Indus., Inc. v. Dakota Sportswear, Inc., 946 F.2d 1384, 1387 (8th Cir. 1991).

accounts were valid and therefore were in fact debts legally owed, a validation letter was sent to [Defendant] on" January 12, 2015.[5] (Id. at ¶ B). In his self-described validation letter, "the account information from the credit report was made clear to [Defendant] and requests were made to ensure that [Defendant] was in fact the holder of the original note referenced by the credit report account." (Id.). Plaintiff's letter included the account information for the alleged debt, a demand for "[a]n ORIGINAL signed contract and other supporting documentation that gave rise to the alleged obligation [Defendant] is claiming owed," and a demand for a statement that Defendant "as a debt collector" had "not purchased evidence of debt and are proceeding with this collection activity solely in the name of the original contracting party." (Compl., Exhibit B, [Docket No. 1-1]).

Plaintiff's letter also contained a demand for "[p]roduction of the account and general ledger statement showing the full accounting of the alleged obligation . . . signed and sworn by the person responsible for maintaining these records" and clarification as to whether the "loan has been secured," and if so secured, "the pooling and servicing agreement that names [Plaintiff's] loan as well as any documentation that explicitly gives you the right to service [Plaintiff's] loan as well as enforce the promissory note in the event of a foreclosure." (Compl., Exhibit B, ¶¶ 3,5,6, [Docket No. 1-1]).  Notably, the letter included a demand for presentment "for [Plaintiff's] visual inspection MY ORIGINAL WET INK SIGNATURE PROMISSORY NOTE." (Id. at ¶ 7). Plaintiff maintained that "[a] photocopy of the documents is insufficient proof." (Id.).

---

[4] The Plaintiff's Complaint is not specific as to which credit reporting entity he means by the given reference to "the Credit Bureau."

[5] The Plaintiff alleges that the date of the letter was January 12, 2015, in his Complaint, (Compl., [Docket No. 1-1], at ¶ B), but the letter attached as Exhibit B is dated January 6, 2015. (Compl., Exhibit B, [Docket 1-1]).

Plaintiff's letter further maintained that if Defendant was unable to provide proof as demanded "within 30 days, then [Defendant] admit[ted] to not being a party of interest and cannot rightfully enforce [its] claim . . . ." (Id.). Lastly, Plaintiff's letter informed Defendant that "this debt is now officially in dispute. By law, all collection activates [sic] must cease until this matter is resolved." (Id. at ¶ 9).

On January 22, 2015, Defendant sent a letter which Plaintiff describes "that may or may not have been a response to the validation letter" previously sent to Defendant by Plaintiff. (Compl., [Docket No. 1-1], at ¶ C).[6] On February 5, 2015, Defendant "sent a letter including a record of accounting that showed payments made by [Plaintiff] on this invalidated debt." (Id. at ¶ F).[7] This letter is also purported to have contained an "alleged copy of the 'note', and claimed that the right of presentment was waived under page 2 paragraph 7 of the alleged 'note'." (Id. at ¶ G).[8] "However, [Plaintiff contends] no signatures or other marks are present on page 2 of the alleged 'note' indicating that it was part of the original agreement." (Id.).

The Complaint alleges that in the interest of "giving [Defendant] a second chance to validate the debt, a second validation letter was sent [by Plaintiff] on" February 12, 2015. (Id. at ¶ E). In this second letter, Plaintiff renewed his previous demands, and he informed Defendant that "if Collector has reported invalidated information to any of the 3 major Credit Bureaus (Equifax, Experian or TransUnion) this action may constitute fraud under both Federal and State Laws." (Compl., Exhibit F, [Docket No. 1-1]). Plaintiff also informed Defendant by this February 12th letter that "if any negative mark is found on any of my credit reports by Collector or the client that you represent, [Plaintiff] will not hesitate in bringing legal action against you

---

[6] The letter is referred to as Exhibit C in the Complaint, but there is in fact no Exhibit C attached. The Exhibits to the Complaint simply go from Exhibit B to Exhibit D.
[7] This letter is also missing from the Exhibits to the Complaint.
[8] The page of the note containing the waiver of presentment is Exhibit J. (See Complaint., Exhibit J, [Docket No. 1-1]).

and your client." (Id.). Plaintiff also informed Defendant of the "consequences in [sic] violating the Fair Debt Collection Practices Act," and demanded that Defendant "permanently cease all collection activity related to the above-referenced account" and "delete" the account from Plaintiff's credit reports. (Id.).

Additionally, "the Credit Bureau" was contacted and the account was purportedly officially contested by Plaintiff. (Compl., [Docket No. 1-1], at ¶ H). A response to that request came from "the Credit Bureau." (Id.). The date of that request and the date of the response are unknown.[9] The contents of the letter are not addressed in Plaintiff's Complaint; rather, it only states that the letter was a response to his contesting of the account.[10]

The Plaintiff never alleges in his Complaint that the account is in default or that Defendant is currently trying to collect on the account.[11] Additionally, the Complaint lacks any factual allegations as to the nature of the underlying debt or its origins. The Court can and does draw the reasonable inference that the underlying account is a residential mortgage. This inference is developed from the business nature of the Defendant and the listing of the account under "Mortgage Accounts" on Plaintiff's credit report. (See Compl., Exhibit A, [Docket No. 1-1]).

The remainder of Plaintiff's Complaint consists of mere legal conclusions, in which the Court finds no additional facts alleged in support thereof. As such, the Court is not required to accept such unsupported legal conclusions as true even under the generous standard for viewing the record in the context of a motion to dismiss. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555

---

[9] The Plaintiff's Complaint describes the letter as dated "CR2."
[10] The Plaintiff states that the letter is attached to the Complaint as Exhibit G, however, no Exhibit G is attached thereto. It simply goes from Exhibit F to Exhibit H.
[11] Even construing the Complaint, and all its attachments, liberally these facts cannot be found alleged in the Complaint.

(2007) ("[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions[.]") (internal quotation marks and citation omitted).

## IV.     DEFENDANT'S MOTION TO DISMISS, [Docket No. 4]

Defendant moves under Fed. R. Civ. P. 12(b)(6) seeking to have this Court dismiss, with prejudice, Plaintiff's action for failure to state a claim upon which relief can be granted.  While the overall substance of Plaintiff's claim is difficult to parse out, it appears that he is attempting to claim Defendant violated the Fair Debt Collection Practices Act (FDCPA) on three separate occasions.

Defendant's motion to dismiss maintains that Plaintiff (1) did not allege sufficient facts to show Defendant is a "debt collector" as required under the FDCPA, (2) did not allege sufficient facts that the debt presently at issue is in fact a "debt" covered under the FDCPA, and (3) did not allege sufficient facts for a claim under § 1692g of the FDCPA.  Defendant also briefly argues that Plaintiff is not entitled to injunctive relief under the FDCPA.

In his Complaint, even liberally construed by the Court, Plaintiff alleges only generally Defendant "has violated the FDCPA (Fair Debt Collection Practices Act) 3 separate times." (Compl. [Docket No. 1-1]). The Plaintiff asserts the first violation was Defendant's failure to respond to his initial letter of January 22, 2015. (Id. at ¶ C). Specifically, Plaintiff argues "no presentment of any kind was made to a request that the indenture instrument be presented. This lack of presentment, see Exhibit D, means that the debt is dishonored and therefore no debt is currently owed." (Id.) Plaintiff continued his pleading stating that:

> [b]y not validating the debt with an appropriate response, see Exhibit C, [Defendant] has broken the United States Code section which is the FDCPA, and so fines are due in the amount of $1,000, see Exhibit H [sic] Validation of a debt must occur within 30 days and there was not validation, see Exhibit E.

(Id. at ¶ D).

Plaintiff's next general allegation is that he sent a second "validation" request to Defendant and "[a]gain [Defendant] did not present the original indenture instrument. This was a second violation of the FDCPA, and so fines are due in the amount of $1,000, see Exhibit H. Validation of a debt must occur with 30 days, and there was no validation." (<u>Id.</u> at ¶ E).

Regarding Defendant's alleged third violation of the FDCPA, Plaintiff contends:

> CREDIT BUREAU was contacted and the account was officially contested by [Plaintiff]. A response to that request came from CREDIT BUREAU dated CR2, see Exhibit G. Despite the loan being previously invalidated, as referenced above, [Defendant] verified the account as accurate to CREDIT BUREAU, see Exhibit G. This was the third violation of the FDCPA by [Defendant] by verifying an invalidated account and fines are due in the amount of $1,000, see Exhibit H.

(<u>Id.</u> at ¶ H).

For Plaintiff's apparent FDCPA violation claims to survive the present Rule 12(b)(6) Motion to Dismiss he must plead sufficient facts showing two threshold issues: (1) that Defendant is a "debt collector" as defined by the FDCPA, and (2) that the underlying debt presently at issue is a "debt" as defined by the FDCPA.

**A.      Plaintiff failed to allege facts that Defendant was a "debt collector" under the FDCPA.**

Congress enacted the FDCPA to "eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). In order to establish a violation of the FDCPA, Plaintiffs must, as a threshold matter, demonstrate that Plaintiff is a "debt collector." <u>See</u> <u>Chomilo v. Shapiro, Nordmeyer & Zielke, LLP</u>, Civ. No. 06–3103, 2007 WL

2695795, at *2 (D.Minn. Sept. 12, 2007) (Kyle, J.). Without this showing, a FDCPA claim cannot be maintained.

The FDCPA defines the term "debt collector" as "any person who . . . regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). However, "a debt collector does not include the consumer's creditors, *a mortgage servicing company*, or an assignee of a debt, as long as the debt was not in default at the time it was assigned." Thulin v. EMC Mortgage Corp., Civ. No. 06–3514, 2007 WL 3037353, at *5 (D. Minn. Oct 16, 2007) (Kyle, J.) (emphasis added) (quoting Perry v. Stewart Title Co., 756 F.2d 1197, 1208 (5th Cir.1985)); accord Conklin v. Purcell, Krug & Haller, No. 1:05–CV–1726, 2007 WL 404047, at *5 (M.D.Pa. Feb. 1, 2007) (collecting cases); Scott v. Wells Fargo Home Mortgage, Inc., 326 F.Supp.2d 709, 718 (E.D.Va.2003).

In contrast to the definition of "debt collector," the definition of "creditor" under the FDCPA is "any person who offers or extends credit creating a debt or to whom a debt is owed, but such term does not include any person to the extent that he receives an assignment or transfer of a debt in default solely for the purpose of facilitating collection of such debt for another." 15 U.S.C. 1692a(4). "A distinction between creditors and debt collectors is fundamental to the FDCPA, which does not regulate creditors' activities at all." Schmitt v. FMA Alliance, 398 F.3d 995, 998 (8th Cir. 2005) (quoting Randolph v. I.M.B.S., Inc., 368 F.3d 726, 729 (7th Cir. 2004)).

In support of his argument that Defendant is a "debt collector" Plaintiff asserts:

> Lest there be any confusion on whether the FDCPA applies to [Defendant] as a debt collector, the Consumer Financial Protection Bureau (CFPB) is the government agency that oversees the implementation of the FDCPA and defines who fits the qualifications of debt collector in a bulletin, see Exhibit I. The CFPB defines debt collector broadly and includes [Defendant] into the category with other designees that the CFPB collectively calls "service providers". Therefore, [Defendant], as claiming to be in

> service of this debt (which clearly they are not by not being able to
> present the original indenture instrument), and they must follow
> the letter of the law as provided in the FDCPA. [Defendant] is a
> debt collector as defined by the CFPB and therefore the FDCPA.

(Compl., [Docket No. 1-1], at ¶ J). Construing the foregoing portion of Plaintiff's pleading as

liberally as possible, it seems the Plaintiff asserts, as a mere legal conclusion, that because the

Consumer Financial Protection Bureau (CFPB) refers to "service providers" as included in the

definition of "debt collectors," the Court is therefore bound to include "service providers" under

the FDCPA. The Plaintiff cites to no authority, and the Court finds no authority, to substantiate

this mere legal conclusion.

Furthermore, a plain reading of the CFPB bulletin, which Plaintiff attaches to his

Complaint, shows his assertion is a mischaracterization of the content of the bulletin and its

intent. (See Compl., Exhibit I, [Docket No. 1-1]). Even construed liberally, the bulletin does not

purport to provide a definition of "debt collector" or offer any guidance as to who or what the

FDCPA governs. (See Id.). Instead, the bulletin purports to offer guidance to those parties whose

debts are already in "collections." (Id.). The bulletin is also not limited to the FDCPA; it

simultaneously offers guidance on both the FDCPA and the Dodd-Frank Act, so any conclusions

gleaned from the bulletin would presumably be generalized amalgamations of the FDCPA and

the Dodd-Frank Act. (See Id.). The CFPB's informational bulletin does not in any event trump

the plain statutory language of the FDCPA.

There is nothing factually alleged in the Complaint or contained in the Exhibits attached

thereto to support any inference other than that Defendant is a creditor. (See Compl. [Docket No.

1-1]). Plaintiff himself refers to Defendant as "CARRINGTON MORTGAGE SERVICES" in

every lettered paragraph of his Complaint (See Id.). Plaintiff himself even argues that the

Defendant is in a group referred to as a "service providers." (Id. at ¶ J). No inference can

reasonably be drawn from these allegations other than the inference that Defendant is a mortgage servicer.

Additionally, Plaintiff pleads no factual allegations as to whether Defendant was assigned the loan, or even began to service the mortgage, *after* the loan had gone into default. (See Compl. [Docket No. 1-1]).

Therefore, even construing the Plaintiff's Complaint, and its attachment, as liberally as possible, the Plaintiff has failed to plead any facts showing Defendant is a "debt collector" as defined by the FDCPA. Plaintiff's mere legal conclusion that "[Defendant] is a debt collector," (Compl., [Docket No. 1-1], at ¶ J), is of no consequence. As noted above, Plaintiff must do more than merely plead legal conclusions; he must plead facts sufficient to establish that Defendant is a "debt collector."

Accordingly, this Court finds that Plaintiff has failed to plead sufficient facts to plausibly establish Defendant is a "debt collector" under the FDCPA. Therefore, Plaintiff's claims under the FDCPA fail to state a claim upon which relief may be granted.

**B.     Plaintiff also failed to allege facts that the underlying account was a "debt" under the FDCPA.**

Although, the Court recommends granting Defendant's Motion to Dismiss, [Docket No. 4], on the basis that the Plaintiff's pleading lacks sufficient facts to show Defendant is "debt collector" as defined by and subject to the FDCPA, the Court will, out of an abundance of caution, also address another of Defendant's alternative basis for its Rule 12(b)(6) motion.

Defendant argues that Plaintiff's Complaint fails to allege sufficient facts to show that the underlying debt, presently at issue, is even a "debt" as defined under the FDCPA.

The FDCPA defines a "debt" as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services

which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." 15 U.S.C. § 1692a(5). The plain language of the statute indicates that the FDCPA may be triggered only when an obligation to pay arises out of a consumer transaction. Graham v. ACS State & Local Solutions, Inc., Civ. No. 06-2708 JNEJJG, 2006 WL 2911780, at *1 (D. Minn. Oct. 10, 2006) (citing Hicken v. Arnold, Anderson & Dove, P.L.L.P., 137 F.Supp.2d 1141, 1143 (D.Minn.2001)). At a minimum, the transaction must involve a business dealing or other consensual consumer obligation. Id. (citing Hawthorne v. Mac Adjustment, Inc., 140 F.3d 1367, 1371 (11th Cir.1998) & Bass v. Stolper, Koritzinsky, Brewster & Neider, S.C., 111 F.3d 1322, 1326 (7th Cir.1997)). For purposes of the FDCPA statute, a "debt" can arise only from a "transaction in which money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes." Gulley v. Markoff & Krasny, 664 F.3d 1073, 1074 (7th Cir. 2011) (citing 15 U.S.C. § 1692a(5)). If the debt does not arise out of a consumer transaction, the FDCPA does not apply to the collection of that debt as an initial matter, and all of Plaintiff's claims under the FDCPA must fail. See Benbrooks v. Voigt, Rode & Boxeth, LLC, Civ. No. 15-1896 PAM/HB, 2015 WL 4601193, at *2 (D. Minn. July 30, 2015).

Thus, to state a claim under the FDCPA, the debt at issue must arise for personal, not business, purposes.  "The inquiry revolves around the **purpose** for which the debt was incurred." Petsche v. EMC Mortg. Corp., 830 F. Supp. 2d 663, 673 (D. Minn. 2011) (citing 15 U.S.C. § 1692a(5)). "[T]he relevant time for determining the nature of the debt is when the debt first arises." Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, & Clark, L.L.C., 214 F.3d 872, 874 (7th Cir.2000).

As noted above, the Plaintiff pleads no facts in his Complaint related to the origins or purpose of the underlying "debt." As observed in the previous section, construing the Complaint, and its attachments, as liberally as possible, the Court can infer only that the underlying debt is a mortgage secured by real estate. This inference is made from the account being listed under the heading "Mortgage Accounts" and indicated as a "FHA Real Estate Mortgage" on Plaintiff's attached credit report. (Compl., Exhibit A, [Docket No. 1-1]). The type of FHA loan cannot be inferred from the Complaint or the Exhibits. This proves problematic for the Plaintiff.

If the debt does not arise out of a consumer transaction, all of Plaintiff's attempted claims under the FDCPA must fail. See Benbrooks v. Voigt, Rode & Boxeth, LLC, Civ. No. 15-1896 PAM/HB, 2015 WL 4601193, at *2 (D. Minn. July 30, 2015). In the present case, the Plaintiff does not plead facts indicating what type of FHA loan the underlying debt is. Thus, the Court cannot conclude the debt arises out of a transaction whose primary purpose was a personal, family, or household purpose. For example, it could be a FHA refinance loan where the monies were used for non-business purposes; however, there is no way to know from the Complaint.

Accordingly, the Court finds that, even construed liberally, Plaintiff has plead insufficient facts to establish the underlying debt as a "debt" subject to the FDCPA. Therefore, Plaintiff's claims under the FDCPA fail to state a claim upon which relief may be granted.

**C.      The effect to be given to the dismissal of the Complaint**

"Ordinarily dismissal of a [pleading] for failure to comply with Rule 8 should be with leave to amend." Michaelis v. Neb. State Bar Ass'n., 717 F.2d 437, 438–39 (8th Cir.1983). Nonetheless, when a complaint is so deficient or defective that the court is convinced that its defects cannot be cured through re-pleading, dismissal with prejudice is appropriate. See McLean v. United States, 566 F.3d 391, 400 (4th Cir.2009) ("to the extent ... that a district court

13

is truly unable to conceive of any set of facts under which a plaintiff would be entitled to relief, the district court would err in designating [a] dismissal to be without prejudice. Courts, including this one, have held that when a complaint is incurable through amendment, dismissal is properly rendered with prejudice and without leave to amend."); McKesson HBOC, Inc. v. New York State Common Ret. Fund, Inc., 339 F.3d 1087, 1096 (9th Cir. 2003) (dismissal with prejudice is appropriate where "deficiencies in [plaintiff's] claims cannot be cured by amendment"). The latter circumstance is not the case here.

This Court cannot conclude that it is "truly unable to conceive of any set of facts under which [Plaintiff] would be entitled to relief." See McLean, 566 F.3d at 400. As such, the Court cannot hold that the "defects cannot be cured through re-pleading." See Id. A *pro se* litigant should be given chance to amend a Complaint unless it is "absolutely clear that the deficiencies of the complaint could not be cured by amendment." (Cato v. United States, 70 F.3d 1103, 1106 (9th Cir.1995).

Accordingly, the undersigned recommends that Plaintiff's claims be dismissed without prejudice.

In summary, the Court finds, on the record as presented, that no facts have been sufficiently plead to plausibly show that  Defendant is a "debt collector" or the underlying account is a "debt" as covered by and therefore subject to the FDCPA. These threshold issues warrant dismissal, so this Court does not reach any additional issues raised by the motion at this time.

## V.    CONCLUSION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. Defendant's Motion to Dismiss for failure to state a claim, [Docket No. 4], be **GRANTED;** and that

2. This matter be **Dismissed Without Prejudice.**

Dated: October 2, 2015
                                                    s/Leo I. Brisbois
                                                    Leo I. Brisbois
                                                    United States Magistrate Judge

## N O T I C E

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "A party may file and serve specific written objections to a magistrate judge's proposed findings and recommendation within 14 days after being served with a copy of the recommended disposition[.]" A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).

**Under Advisement Date:** This Report and Recommendation will be considered under advisement 14 days from the date of its filing. If timely objections are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 14 days after the objections are filed; or (2) from the date a timely response is filed.